*1219 LOURIE, Circuit Judge,
dissenting in part.
I join the court’s opinion with respect to the issues related to the '954 patent and the cross-appeal. However, I respectfully dissent from the majority’s conclusion that the district court erred in construing the “terminal device” limitation of the '131 patent. In light of the specification and the prosecution history of the '131 patent, I would affirm the district court’s construction of “terminal device” and thus its grant of summary judgment of noninfringement for the '131 patent.
The district court construed “terminal device” as “a computing device such as a data terminal, workstation, portable computer, or smart phone that enables a user to communicate with a host processor,” and Lucent does not challenge that portion of the construction. The court also stated as part of the construction that a “terminal device” “manages its associated display itself and manages its internal memory with the assistance of the host processor,” and Lucent argues that this portion of the construction is inconsistent with the specification.
The majority here holds that the abstract, the summary of the invention, the written description, and the prosecution history justify reversal. I do not agree.
While the majority concludes that the abstract of the '131 patent does not “compel” the construction adopted by the district court, the abstract clearly supports that construction. The abstract states that “a host processor may specify relative rather than specific attributes for an object that is to be displayed on a terminal display, thereby leaving it up to the terminal to display an object in accord with its own capabilities.” '131 patent (emphases added). The abstract uses the general term “attributes” without indicating whether or not those attributes relate to the size and location of objects on a terminal’s display. More importantly, in the same sentence referencing “relative” attributes, the pat-entees emphasized that it is the terminal which exercises control over the display of objects identified by the host. The other portions of the patent specification continue this emphasis on the terminal’s control of its own display.
The '131 patent states in the “Summary of the Invention” that after the “host computer” transmits “an object type” to the “terminal device,” the “terminal device, in turn and in accord with an aspect of the invention, displays the object in a form determined solely by the terminal device but in accordance with respective predefined policies.” '131 patent col.2 11.12-22 (emphasis added). The inventors made clear that the “terminal device” manages its own display, and, in particular, the size that the objects will take on the “terminal device” display. This message is repeated later in the specification in the passage that the district court quoted as part of its construction: “In accord with the principles of the invention, a terminal that is communicating with the transaction processor 200 manages its associated display itself, and manages its internal memory with the assistance of processor 200.” '131 patent col.6 11.61-65 (emphasis added). By the inventors’ own admission, this statement relates to the “principles of the invention” as a whole, not just a preferred embodiment.
The description of the “BITMAP object” in the specification referenced by Lucent is not to the contrary. The specification describes using the “BITMAP object” to transmit images such as a logo in combination with “Growable” or “Shrinkable” attributes that the host sends to the terminal device as part of the command to create the “BITMAP object.” '131 patent col.7 11.34-61. However, the specification makes *1220 clear that these optional commands only tell the terminal device to scale a picture, defined by a “bitstream” of “pixels,” up or down to fit the portion of the display allocated to the picture by the terminal device itself. Id. The host does not specify how much space on the display the terminal device will use for the picture or where on the display that space will be.
Lucent’s reliance on the specification’s description of the “REGION object” I find similarly unpersuasive. First, the specification describes the use of this object as optional. '131 patent col.8 11.5-8 (“program running on transaction processor 200 may use the REGION object”). Even within the description of the “REGION object,” the specification severely limits the input from the host processor: “It is to be understood, however, that the way in which a display is actually partitioned into such regions is under the control of the [exemplary terminal device].” Id. at col.8 11.15-18. The “REGION object” only allows the host to specify that objects grouped within a region should be displayed horizontally (ie., in a row) or vertically (i.e., in a column), but, even then, specification of a secondary direction is allowed because the number of objects in the specified group may not be capable of display in the primary direction. Id. at col.8 11.5-59. Thus, even the relative control that may be exercised over the positioning of objects on the terminal device’s display is limited. The specification further describes that by creating a hierarchy of “dummy regions,” the host may exercise modest control over the relative placement of objects with respect to one another (e.g., two objects will share in an unspecified manner a space of unspecified size beneath another object of unspecified size). Id. at col. 11 11.7-40.
However, the inventors gave up even this very limited form of control over the terminal device’s display during prosecution. “Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification.” Phillips v. AWH Corp., 415 F.3d 1303, 1313 (Fed.Cir.2005) (en banc). “[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be.” Id. at 1317. In arguing to overcome the examiner’s rejection under 35 U.S.C. § 102(e), the inventors contrasted their invention with that of the prior art Busboom patent:
In contrast, a host computer in the claimed invention does not specify where an object type is to be displayed on the display of a terminal. The reason for this is that it is the terminal and not the host computer which decides where an object is to be displayed on the terminal display.
J.A. at A00907 (emphases added). The inventors emphasized the host processor’s lack of participation in the control of the terminal device’s display in order to overcome Busboom. They did not argue that the amount of control exercised by the host processor in their invention differed from the amount of control exercised by the host in the Busboom patent. Instead, they made the broad and simple statement that in their invention the host processor does not specify where objects are located on the terminal display. The public was entitled to rely on that statement in understanding the scope of their invention. It is disingenuous for the inventors to say now that allowing the host processor to specify some limited relative positioning was an important aspect of their invention that *1221 they did not intend to surrender when they made absolutely no effort to provide such clarity in the prosecution of their patent.
Thus, I would affirm the district court’s construction of the “terminal device” limitation and thus its grant of summary judgment of noninfringement of the '131 patent.